Syllabus.

# NANCY L. BEACROFT *et al.*

### *v.*

# PHEBE B. STRAWN, Admx., etc.

1. SHELLY'S CASE—*rule in.* Where a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.

2. SAME—*where the word "heirs" is not used.* Where the devise or conveyance is to a person and the children of his body, the words are not technical, and the word "children" is not one of limitation but of purchase, and creates a remainder.

3. Where land was conveyed to a married woman by a trustee in accordance with the direction in the will of her father and the decree of court, the deed reciting that the ancestor had devised a tract of land in Bourbon county, Ky., and a slave, to the grantee, and the circuit court of that county had, by decree, appointed the grantor to sell the land and slave and invest the proceeds in lands in the State of Illinois, to be held by her during her life, and at her death to belong to the children of her body, and after acknowledging the receipt of the consideration, granted the land "to the party of the second part," the *habendum* part, being: "the said land hereby conveyed, to be held and used by the said Nancy L. Beacroft during her natural life, free from the debts, contracts and liabilities of the husband of the said Nancy L. Beacroft, and at her death to go to the children of her body, according to the last will of, etc., and the decree of said Bourbon circuit court," etc., "to have and to hold as aforesaid, the land, premises and appurtenances aforesaid unto the party of the second part, their heirs and assigns, forever:" *Held,* that this case is not within the rule in Shelly's case, and that Mrs. Beacroft took a life estate only, and her children took the remainder, which became liable to the payment of their debts according to their several interests.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CHARLES D. HODGES, Judge, presiding.

Mr. WILLIAM BROWN, for the plaintiffs in error.

Mr. WILLIAM THOMAS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed by defendant in error, in the Morgan circuit court, against plaintiffs in error. It appears that Jacob Strawn, in his lifetime, recovered, in the Morgan circuit court, a judgment against Aquilla and George Beacroft for the sum of $577.09, and $9.50 costs, upon which several executions were issued, but the money was not collected. George died intestate in 1865, after the last execution was returned, leaving his father, mother, brothers and sisters his heirs, who inherited his estate; that Aquilla Beacroft, in 1849, or previously, conveyed the lands described in the bill to James Arnold, who was acting as a commissioner of the circuit court of Bourbon county, Kentucky, to invest certain trust funds in real estate for the use of Nancy L. Beacroft and the children of her body; that, in executing the trust, Arnold purchased and paid for the lands, and conveyed them, or intended to convey them, to Nancy L. to hold during her life, and at her death to the children of her body, but made a mistake in describing a portion of them. The deed declared that she should hold them during her life free from the debts of her husband, and at her death to go to the children of her body in fee; that she has held the possession of the land, claiming and holding the same under the conveyance from Arnold, for more than twenty years.

It appears that Nancy L. Beacroft had ten children, of whom George Beacroft was one, and it is claimed that each of them became invested with one-tenth part of the premises subject to the life estate of their mother; that, on George's death, his tenth part descended, subject to the lien of this judgment, to his father, mother, brothers and sisters, the parents taking each two-thirteenths and the brothers and sisters each one-thirteenth, subject to the life estate of Nancy L. Beacroft; that George died, leaving no other property than his interest in this real estate; that no administration was granted on his estate; that Jacob Strawn, after recovering his

judgment, died intestate, and defendant in error was duly appointed administratrix of his estate; that other children of Nancy L. have died, and it is claimed that Aquilla has inherited, as an heir of such deceased children, his proportionate share of their interest in the premises, and that his interest thus derived from them and George, and the remainder of George's interest, are subject to sale to satisfy this judgment.

On the hearing, the court below found and decreed that Nancy L. owned a life estate, and that the children of her body were each vested with the fee to one undivided tenth part of the land; that the interest of George was subject to his debts, and liable to be sold therefor; and found that there was due on the judgment, with costs, the sum of $1012.68, and ordered the heirs of George to pay the same in thirty days, and in default thereof, that his interest be sold. The record is brought to this court, and errors are assigned.

It is urged by plaintiffs in error that the conveyance to Mrs. Beacroft falls within the rule in Shelly's case, and that she took the fee pure and absolute. On the other hand, it is contended that she took only a life estate, and "the children of her body" took the remainder; that they took as purchasers, and that the words "children of her body" described them as purchasers, and not as limiting the estate.

As remarked by Preston, in his work on "Estates," the extent and importance of the rule in that case, the variety of cases which it embraces, the doubts entertained of its extent and application, and the nice distinctions and numerous exceptions which it admits, render the consideration of the rule, and its exceptions, a task of great difficulty in numerous cases. He lays it down, and is fully supported by the authorities, that the rule is of positive institution, and not of interpretation; that instead of seeking the intention of the parties, it, in some of the cases at least, if not in all, interferes with the presumable intention, and in many cases with the express intention of the parties. Preston on Estates, 271. It is usually a question as to the legal effect of the language employed.

But Lord MANSFIELD, in *Perrin* v. *Blake*, 4 Burr. 2579, said that the rule is not a general proposition subject to no control. And Mr. Justice BULLER, in the case of *Hodgson* v. *Ambrose*, Dougl. R. 337, said, " If a testator makes use of legal phrases, or technical words only, the court is bound to understand them in their legal sense, and they have no right or power to say that the testator did not understand the meaning of the words he has used, or put upon them a construction different from what has been long received, or what is affixed to them by law. But if a testator use other words which manifestly show what his intention was, and show to a demonstration that he did not mean what the technical words import in the sense which the law has imposed upon them, that intention must prevail, notwithstanding he has used such technical words in other parts of the will."

And Lord HARDWICKE, in the case of *Bagshew* v. *Spencer*, 2 Atk. 583, said that " The operation of words must arise from the sense they carry," and BULLER said that can only be found by considering the whole will together.

The rule in Shelly's case is stated by Kent in his Commentaries, Vol. 4, p. 214, in these words : " That where the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, 'the heirs' are words of limitation of the estate, and not words of purchase." And Preston, in his work on Estates, as given by Kent, defines the rule to be, "Where a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." These are perhaps the most accurate definitions of the rule to

be met with in the books, and it only remains to determine whether the case at bar is embraced within it.

The deed from Arnold conveying the lands recites that Jacky S. Hitt, of Bourbon county, Kentucky, had devised a tract of land in that county, and a slave, to Nancy L. Beacroft, and the circuit court of that county had, by decree, appointed Arnold to sell the land and slave and invest the proceeds in lands in the State of Illinois, to be held by her during her life, and at her death to belong to the children of her body; and the deed, after acknowledging the receipt of the consideration, grants the land "to the party of the second part." The *habendum* clause is this: "The said land hereby conveyed, to be held and used by the said Nancy L. Beacroft during her natural life, free from the debts, contracts and liabilities of the husband of said Nancy L. Beacroft, and at her death to go to the children of her body, according to the last will of the said Jacky S. Hitt, and the decree of said Bourbon circuit court," etc., "to have and to hold as aforesaid the land, premises and appurtenances aforesaid unto the party of the second part, their heirs and assigns forever."

The will of Hitt, referred to in the deed, devises the balance of his land and slaves in Kentucky to be equally divided among the following named of his children, to-wit: "to Nancy L. Beacroft, and at her death her portion to go to the children of her body," etc. Devises of the same character were made to a number of his other children.

Does the language employed in this conveyance only operate as a limitation of the estate to the first taker, or does it designate the children of her body as purchasers of the remainder? If but a limitation of the estate, she took a fee simple absolute, otherwise she took but a life estate.

It has been held that where the devise or conveyance is to a person and the children of his body, the language is not technical, and that the words are not those of limitation, but of urchase.

In Wilde's case, 6 Coke R. 17, this distinction was taken, and it was held that the word "children," in a devise, was a word of purchase, and not of limitation, and that case was followed *In the matter of Saunders et al.* 4 Paige, 203; and the same rule was announced in *Rogers* v. *Rogers,* 3 Wend. 505; and again in *Chrystee* v. *Phy,* 19 N. Y. R. 344. And the case of *Baker* v. *Scott,* 62 Ill. 86, recognizes the same distinction.

In the case of *Crawford* v. *Trotter,* 4 Madd. 192, it was held, in a devise of annuities to "Lady Scott and to her heirs (say children)," she took a life estate, and her children the remainder; that, as used in this will, the word "heirs" was used as synonymous with "children," and imported that they were to take after her death. The language of this deed and the will of Hitt, according to the distinctions taken in the cases referred to, take this case out of the rule in Shelly's case, and they establish a broad distinction between the words "heirs of the body" and "children of the body," the former only operating as a limitation of the estate, whilst the latter operate as words of purchase, and create a remainder. Mrs. Beacroft, then, took a life estate, and her children took the remainder, and that remainder became liable for the debts of any of her children to the extent of their several interests, subject to her life estate. And on the death of any of the children, their several shares, in default of a will, descended, under the statute, to their heirs, subject to any liens that each of them may have created, and to their mother's life estate.

It, then, follows that George's share in the lands became liable to sale on the execution against him and his father, subject to his mother's life estate; and the portion of the share of any other of the children who may have died, which has descended to the father, is subject to the payment of this judgment in like manner. But a careful computation of the interest due on the judgment shows that the decree is about $61 too large.

3—67TH ILL.

For this error, we are compelled to reverse the decree and remand the cause, that the court below may enter a decree for the proper sum.

*Decree reversed.*