# MARK H. COOPER *et al.*

*v.*

# SARAH A. COOPER *et al.*

1. CONVEYANCE—*rule of construction.* According to the rules of construction of deeds of conveyance, all the language of the grant must be considered and effect given to it, unless it is so repugnant or meaningless that it can not be done; and when that is the case, the repugnant or senseless portion may, in some cases, be rejected as surplusage.

2. SAME—*grant construed.* A deed to A and B, husband and wife, contained the following granting clause: "Have granted, bargained and sold, and by these presents do grant, bargain and sell unto the party of the second part and his assigns, with power to sell the same, during the life of the said A, and to his wife, B, after the death of her husband, A, during her widowhood, and after her death, or, after she ceases to be the widow of said A, to the heirs of A on the body of the said B begotten, certain tracts of land," etc.: *Held,* that A took a life estate, with a power to sell and convey the fee, and B a conditional life estate after the death of A, liable to be defeated on her marriage, and that the heirs of A, begotten of the body of B, before or after the grant, took the remainder in fee simple absolute.

3. SAME—*office and effect of the habendum.* The *habendum* clause of a deed of conveyance can not enlarge the estate granted contrary to the terms of the granting clause. Its proper office is, not to give anything, but to limit or define the certainty of the estate in the grantee who should be named in the previous part of the deed.

4. SAME—*deed to husband and wife—tenancy by the entirety—survivorship.* Under the legislation of this State giving married women the right to acquire property, and hold the same free from their husband's control, the reason for the rule which holds that a conveyance to husband and wife makes them tenants by the entirety with right of survivorship, has ceased to exist, and they will, in this State, take and hold as tenants in common.

5. SAME—*deed construed.* A deed for land described the grantees as husband and wife, and the heirs of the natural body of the latter, and after acknowledging payment of the consideration by the party of the second part, by apt words conveyed the land to "the said party of the second part, their heirs and assigns, forever." The *habendum* was "unto the said party of the second part, heirs and assigns, forever:" *Held,* that the husband and wife took, each, an undivided half in fee as tenants in common, and that, upon the husband's death, his portion descended to

his heirs at law, subject to the dower of his widow; and that the words "heirs of the body of the wife" must be rejected as surplusage, there being no apt words to limit an estate to the heirs of the wife's body.

WRIT OF ERROR to the Circuit Court of Menard county; the Hon. LYMAN LACEY, Judge, presiding.

This was a bill filed by Mark H. Cooper and others, heirs at law of William Cooper, deceased, against Sarah A. Cooper, widow, and the other heirs at law of said William Cooper, for the partition of certain lands and for the assignment of the widow's dower therein. The court below dismissed the bill, and complainants appealed.

Mr. EDWARD LANNING, and Mr. T. W. MCNEELY, for the plaintiffs in error.

Mr. N. W. BRANSON, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that on the 4th day of March, 1865, Noah M. King and wife conveyed to Wm. Cooper and Sarah Ann Cooper, his wife, and the heirs of her natural body, several tracts of land in Menard county. The consideration expressed in the deed was $6,350, and is stated to have been paid by the party of the second part.

Again, on the 9th day of March, 1866, Wm. S. Senter and wife conveyed to Cooper and wife, for the consideration of $4,000, paid by the party of the second part, certain lands in Menard county.

The granting clause of the deed is this : "Have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the party of the second part and his assigns, with power to sell the same, during the life of said Wm. Cooper, and to his wife, Sarah Ann Cooper, after the death of her husband, Wm. Cooper, during her widowhood, and after

her death or after she ceases to be the widow of said Wm. Cooper, to the heirs of Wm. Cooper on the body of said Sarah A. Cooper begotten, certain tracts of lands," etc. And the *habendum* clause is this : "To have and to hold the aforesaid tracts of land, together with all and singular the privileges and appurtenances thereto belonging, to the only proper use and benefit of the party of the second part, with full power and authority of the said William Cooper to sell, bargain and convey any of said lands or premises during the life of said Wm. Cooper, and after the death of said Wm. Cooper the said lands, if the same shall not have been sold or conveyed by said Wm. Cooper, to be held, possessed and enjoyed by her, the said Sarah A. Cooper, so long as she shall remain the widow of said Wm. Cooper, and all rents and profits thereof, and after she ceases to be the widow of said Wm. Cooper, by death or marriage, the said land and premises to be held and owned by the heirs of said Wm. Cooper on the body of said Sarah A. Cooper, his wife, begotten, or hereafter begotten, in their own right in fee simple, forever, and to their heirs and assigns."

Cooper and wife sold no portion of the lands embraced in these deeds, and he departed this life some time in June, 1873, leaving complainants and others his heirs at law; the widow, Sarah A. Cooper, is still living and has not married since his death ; Albert W., George A., Emma M., Martha A. and Ella J. Cooper, are the only children of the body of Sarah A. Cooper, begotten by intestate—the other heirs, we presume, are his children by a former wife, and the children of his deceased children. The master reported that they were heirs, but does not report how they became so, but says they are his children.

Complainants filed a bill for partition, making the widow and her children, and some of the other heirs, defendants. A hearing was had, when the court below found that Sarah A. Cooper, the widow, had a life estate in the Senter lands, and that her children held the remainder after her death; and

that she was entitled to hold the Senter lands during widow-hood, and, if she never married, for life, in remainder to her children, and dismissed the bill at the costs of complainant. From that decree complainants appeal to this court.

We shall consider and give a construction to the Senter deed first. It is urged that this deed vested the absolute fee in intestate; that it was granted to him and his assigns, and, never having assigned the premises, it descended to his heirs generally; and that, on his death, complainants took under the Statute of Descents. On the other side, it is contended that the deed only vested in intestate a life estate, with power of sale, and, in default of a sale, in remainder for life, entailed to his heirs on her body begotten.

There would seem to be no doubt that William Cooper, by this deed, took a life estate, with a power to sell and convey the fee. From the entire grant, this is the only reasonable construction that can be given to the language; otherwise, all the language of the granting clause which limits a life estate on Sarah A. and Cooper's heirs, begotten on her body, must be rejected, and no rule of law requiring its rejection has been referred to, nor does any occur to us. The language undeniably purports to limit a remainder during widowhood, or for life, on Sarah A., and then a fee tail on his heirs begotten on her body.

The rules of construction require that all of the language of the grant shall be considered, and effect given to it, unless so repugnant or meaningless that it can not be done. When that is the case, the repugnant or senseless portion may, in some cases, be rejected; but the language employed in the granting clause of this deed is neither repugnant nor senseless. It is consistent and harmonious. Had the granting clause stopped with the power to sell, the want of any words to carry a fee to intestate would have been obvious. It used no words that could be construed to confer the title upon his heirs, or that he was to take anything more than a life estate. It is not to him and his heirs, but to him and his assigns. Had it been

to him, without the words "and his heirs," had the word "assigns" been omitted, no one would have supposed that he took anything more than a life estate.

That portion, then, of the granting clause only conveying to him a life estate, it was entirely competent to confer on him full and ample power to sell and convey the fee simple of the premises, which was done by this deed. Having created a life estate in him, it was competent for the grantor to limit a conditional life estate upon his wife, to be defeated on marriage after the death of her husband, and then to entail the estate, as far as our statute permits, to his heirs begotten on her body. Under the rules of the common law, this was not only permissible but was common in conveyancing. And that this deed conveyed a contingent life estate to Sarah A., liable to be defeated on her again marrying, we have no doubt, and that, under our statute, it conveyed a remainder in fee simple absolute to his heirs, on her body begotten, before or after the grant, admits, we think, of no doubt. See *Beacroft* v. *Strawn,* 67 Ill. 28 ; *Butler* v. *Hustis,* 68 Ill. 594; *Voris* v. *Sloan,* 68 Ill. 588; and *Blair* v. *Vanblaircum,* 71 Ill. —. In these cases it is held, that the 6th and 14th sections of the Conveyance Act, (R. S. 1845,) have converted what at common law is a fee tail, into a life estate in the donee, and a remainder in fee simple absolute in the heirs of the body of the grantee. And we have no hesitation in saying, that these cases fully cover and control this ; hence there is no error in the decree as to the lands embraced in this deed.

Nor can the *habendum* clause enlarge the estate contrary to the terms of the granting clause. Its proper effect is, not to give anything, but to limit or define the certainty of the estate to the feoffee or grantee who should be previously named in the premises of the deed; but in this case the *habendum* clause does not profess to enlarge the grant, but follows it in its limitations.

Nor do we see that the conferring the power to sell and convey conferred an absolute fee upon intestate. It is true,

that it gave him the power to pass the fee by sale, and thus cut off the remainder, if he chose ; but he did not exercise the power, and the title passed, according to the terms of the grant, to the widow for life, and in remainder to his children named in the deed. And the *habendum* expressly limits to such heirs, "in their own right, in fee simple, forever, and to their heirs and assigns."

This case is different from the cases referred to by counsel for appellants, as in those cases a fee passed to the first taker, and was not limited over to others, or only a life estate was granted. In the case of *Siegwald* v. *Siegwald*, 37 Ill. 430, the testator only gave to the widow a life estate, and limited a fee to the son. In that case, as in this, the fee was limited on a life estate, and not an attempt to limit a fee upon a fee, which the law forbids. The deed in this case, neither expressly nor by implication, gives or grants to Wm. Cooper a fee, but the language employed only purports to convey a life estate, and a power to sell the fee and remainder.

We now proceed to examine and construe the deed from King and wife to Cooper and wife. The first clause of the deed is this: "This indenture, made this 4th day of March, in the year of our Lord, 1865, between Noah M. King and Jane King, his wife, of the county of Menard and State of Illinois, of the first part, and Wm. Cooper and Sarah Ann Cooper, and the heirs of her natural body, of the county and State aforesaid, of the second part : Witnesseth, that the said party of the first part, for and in consideration of the sum of $6350, in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain and sell unto the said party of the second part, their heirs and assigns, all the following described lot, piece or parcel of land situate," etc. The *habendum* clause is this: "To have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, heirs and assigns, forever."

The parties in this case treat this as a conveyance to the husband and wife in fee simple absolute; and one side contends that they took an estate by the entirety, with survivorship to the longest liver, according to the rules of the common law governing such tenures. On the other side it is insisted that, since the adoption of the act of 1861, commonly known as the "married woman's law," the parties took as tenants in common; that this act authorized a married woman to acquire, during coverture, real and personal estate as her sole and separate property, under her sole control, and to be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried, and that it shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband.

In this case, the property came from another source than the husband. It was conveyed to her by King, who then owned it, and the deed states that the consideration was paid by the party of the second part, and the grantees are described in the deed as the party of the second part; and the reasonable presumption is that her money, as well as that of her husband, was paid for the land, as nothing is shown to contradict the statement in the deed. But, even if it were conceded that the entire consideration was paid by the husband, we presume no one but a creditor of his could object. Husbands out of debt have always had the legal authority to have property settled upon their wives, or conveyed to them. Then, if she thus acquired and paid for her portion of the land with her sole and separate money, and the statute authorizes her to thus acquire real estate, and then to have the exclusive enjoyment and control of it, free from the interference of her husband, why, under the statute, shall she not be treated as a tenant in common with her husband? This statute seems to have removed all of the reasons for holding that such a conveyance creates an estate by the entirety. At the common law, the husband, by marriage, acquired all of the title to

his wife's personal property and choses in action, the right to hold and enjoy the rents and profits of her real estate, and to all of the personal property she might acquire during coverture, and to all of her earnings; and these were the principal considerations which led to the common law rule, that real estate thus acquired should be held as an estate by entirety, with survivorship; and this was all based on the theory that the husband and wife were, by the law, considered but one person, and could not have separate and conflicting property rights. But our statutes have so far changed the common law that they are not one person, so far as the acquisition and enjoyment of property is concerned. To the extent of acquiring property, and so far as its enjoyment is concerned, and the enjoyment of her earnings, the statute has declared, in effect, that they are two independent persons; and in doing so, great modifications have been wrought as to their rights of property. And, under these great changes, no reason is perceived, nor is any suggested, why a married woman should not hold property thus acquired, in fee, and as a tenant in common with her husband, precisely as she might with another person. The husband, under the statute, has no more immediate interest in or control over her property than has any other person. She may delegate the power to her husband to act for her in the management and control of her property, and so she may any other person.

These views are in entire harmony with the case of *City of Chicago* v. *Speer,* 66 Ill. 154. In that case, in construing this statute, it was held that, where a wife was injured in her person, she must sue alone; that it was the intention of the General Assembly to sever the interest of the husband from that of the wife in her property rights, and that they should not join in bringing suit in such a case, lest the recovery might be controlled by the husband, or might survive to the husband in case of the death of the wife. This case can not be distinguished in principle from that, and the reasoning

there employed applies with full force to the facts in this case, and must govern its decision.

If, then, our conclusions are correct, the interest which the husband took by the King deed descended to his heirs in the same manner as though it had been conveyed to him alone. It was, therefore, subject to the dower of the widow, and each of his heirs took under the Statute of Descents, subject to debts and the widow's dower. And Mrs. Cooper took her interest in fee, and holds it since as before the death of her husband.

These views in nowise contravene the case of *Lux* v. *Hoff*, 47 Ill. 425, as in that case the marriage and purchase were before the adoption of the act of 1861. The maxim, *cessante ratione legis, cessat ipsa lex*, applies in this case with full force.

We are aware that this construction is not in harmony with that given by the courts of some of the States of the Union in construing their statutes enabling married women to hold separate property. But it may be our statute is materially different from theirs. But if it is not, still the tenor of our legislation has been broader and more liberal on the subject than the legislation in those States, and hence we. to effectuate the intention of our General Assembly, should be more liberal; otherwise, the courts would rather hinder than carry out the intention of the law. The intention of a law may be, to some extent, ascertained by subsequent legislation on the same subject. If, then, we look at all of our legislation on this subject, we can entertain no doubt that the General Assembly intended to remove all the fetters that barred married women in acquiring and controlling property, and that this was removed with the others. Mrs. Cooper, having acquired the right to purchase and hold in common with her husband, took the property with the incidents of that estate.

But the question arises, whether the heirs of the body of Sarah A. Cooper became purchasers and took with their parents. They are named by that general description as being of the parties of the second part. But it is a familiar rule of

5—76TH ILL.

law that the living have no heirs. Persons may be living who, on the death of a person, may become his or her heirs, but they are not, nor can they be until the person shall die. Then there were no persons in being that could answer to that description when the deed was made, nor are there yet such persons. She, not being dead, has no heirs of her body; she has .children, but not heirs. She, for aught that appears, may then have had children, and others may have since been born of her body, but the deed does not name children of her body. We must therefore hold that these words are inoperative as they would have been had a dead or fictitious person been named as a grantee.

To render a deed valid, there must be proper parties capable of contracting, and they must contract. But here, there is an attempt to convey an interest to persons not then in being, and who may never be. The utmost that could be contended for would be that an undivided half of the property conveyed passed to Mrs. Cooper for life, and in remainder to the heirs of her body. But that can not be so, inasmuch as no apt words were employed to limit such an estate. Nor are they so mentioned in the granting or *habendum* clause. We must reject these words as surplusage, and hold that William Cooper and Sarah A. Cooper were the parties of the second part, and each took an undivided half of the property conveyed by that deed, in fee. And the court below erred in refusing to partition the undivided half of the lands conveyed by the King deed to the heirs of William Cooper, deceased, under the Statute of Descents, and in not assigning to the widow her dower in that undivided half of these lands.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*