MYERS and another v. REED and another.

(*Circuit Court, D. Oregon.* August 8, 1883.)

1. CONVEYANCE TO HUSBAND AND WIFE.
     At the common law a conveyance to husband and wife, as such, made them tenants by entirety, and neither could dispose of the estate thus conveyed without the consent of the other; but upon the death of either, the survivor was the sole owner of it.

2. SAME.
     Prior to June, 1863, if then, or even since, this common-law rule was not changed or modified in Oregon.

3. LAW OF THE STATE.
     The common and statute law of the state, as expounded by the settled decission of its highest court, furnish the rules that govern the descent and alienation of real property therein, and the effect and construction to be given to conveyances thereof.

4. QUITCLAIM, OR DEED OF BARGAIN AND SALE.
     A quitclaim, or deed of bargain and sale, by an occupant of the public land in Oregon before he became a settler thereon under the donation act, passed only the possession, and does not affect an after-acquired estate in the same premises under the donation act or otherwise.

5. PURCHASE OF ADVERSE TITLE BY CO-TENANT.
     In the case of a co-tenancy arising by descent, devise, or one conveyance, the purchase of an adverse title by one of the co-tenants will generally inure to the benefit of the other tenants; but in the case of a mere tenancy in common, this depends upon the circumstances of the case, as that the co-tenant used the co-tenancy, or the title, right, or claim under which it exists, or is claimed to exist, to acquire such adverse title.

6. SAME—BY TENANT FOR LIFE.
     A purchase by a tenant for life of an adverse title will inure to the benefit of the remainder-man.

Suit in Equity to Declare a Trust in Real Property.

*William B. Gilbert,* for plaintiffs.

*Thomas N. Strong,* for defendants.

DEADY, J.   The plaintiffs, citizen of New York and Connecticut, respectively, bring this suit against the defendants, citizens of Oregon, to obtain a conveyance to them of the undivided four-ninths of the north half of lot 4 in block 10 of Couch's addition to Portland, alleging that the same is worth "at least $5,000.". The case was heard upon a demurrer to the bill.   From the latter it appears that on February 16, 1860, William Baker, Robert Pittock, and Tobias Myers were in the possession of the premises, claiming each to be the owner of an undivided third thereof, under and by virtue of a conveyance from John H. Couch and Caroline, his wife, in 1850, to George Flanders, and sundry mesne conveyances thereunder; that at the date of such conveyance said Couch and wife were occupants of a tract of the public land, including the premises in question; that in 1871 the widow and heirs of said John H. "made final proof of his settlement" upon said tract as a donation claim, and on November 13, 1871, a patent issued to them for the same, whereby the south half thereof,

including said block 10, was set apart to said Caroline; that on February 16, 1860, said Baker conveyed his interest in the premises to said Pittock, and Tobias Myers, and M. M. Myers, his wife, and on October 27, 1862, said Pittock conveyed his interest therein to said Myers and wife, who together occupied the same until the death of the former, on March 26, 1863; that said Myers by his last will devised all his interest in the premises to his wife for her life, and the remainder in equal parts to his three nephews, the plaintiffs, and George T. Myers; that said M. M. Myers continued in the sole occupation of the premises from the death of her husband until March 13, 1874, when she and said George T. Myers conveyed their several interests therein to the defendant Simeon G. Reed; that on March 26, 1874, said Caroline Couch quitclaimed the premises to said Reed for the nominal consideration of five dollars, but in fact for the purpose of confirming to said Reed the right claimed under the prior conveyance of her husband, and, as is alleged, upon the erroneous impression that said Reed had acquired all right to the premises under said deed, and was then the equitable owner of the same; and that in March, 1882, said M. M. Myers died, and the plaintiffs, as the devisees of said Tobias Myers, became and are entitled to the undivided four-ninths of the premises. Upon the argument it was insisted by counsel for the defendants that the conveyances by Baker and Pittock to Myers and his wife vested in them an estate as tenants by entirety of the undivided two-thirds of the premises, which neither could dispose of without the assent of the other, and which upon the death of Myers remained in his wife absolutely.

That such was the legal effect of these conveyances at common law there is no doubt; the rule being that as the husband and wife are one in law, they cannot take and hold an estate by moieties, and are therefore seized as tenants by entirety. 2 Black, 182; 1 Washb. Real Prop. 424; 2 Kent, 132; 1 Bish. Mar. Wom. § 613; *Den* v. *Hardenberg*, 18 Amer. Dec. 371, (5 Hall. 42;) *Hoffman* v. *Stigers*, 28 Iowa, 305.

Admitting this proposition, counsel for the defendant contend that the common law has been changed in this state by the operation of certain provisions in the constitution and statutes thereof. These are section 5 of article 15 of the constitution, which provides that "the property and pecuniary rights of every married woman, at the time of marriage, or afterwards acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of the husband; and laws shall be passed for the registration of the wife's separate property." But this provision has no application to property acquired, not by the wife alone, but jointly with her husband. And as property so acquired was not, at common law, subject to the debts or contracts of the husband during the life of the wife, or at all, if she survived him, there was no reason why it should be included therein. Neither does the clause relating to the registration of the wife's sep-

arate property bear upon the question in any way; for if the husband and wife even took as tenants in common, her interest would not be her separate property, unless it was so declared in the conveyance or other source of title.

Sections 9 of the act of January 13, 1854, relating to conveyances, (Or. Laws, 516,) and 1 of the act of October 18, 1862, relating to estates, (Id. 589,) are the statutes which are relied on as modifying this common-law rule. But the second one is too late for this case; it did not take effect until June 1, 1863, and on March 26 of the same year the husband died, leaving the wife the sole owner of the interest in the property conveyed to them during the marriage.

When this act took effect, Tobias Myers and M. M. Myers were, if ever, no longer "persons having an undivided interest" in the two-thirds of this property conveyed to them by Baker and Pittock. On the contrary, the husband's interest ceased with his life, and thereafter the wife held the estate alone. Nor do I think the result would have been different if the statute had taken effect during the life of the husband; for although Myers and wife were two natural persons, yet in contemplation of law they were but one, and on the death of either, that legal personage was represented by the survivor, who was entitled to hold the estate as before. In my judgment the legislature had not the power to divest the survivor of this right in the property without her consent; and it would not be presumed that such was the intention in passing the act, so long as it admits of any other construction. Nor does the act of 1854 help the case of the plaintiffs. As the law then stood, the conveyances from Baker and Pittock to Myers and wife were not "made to two or more persons," but to Tobias and M. M. Myers as one person,—husband and wife, —which gave them and the survivor of them an indivisible estate in the premises.

I do not understand that it is claimed by counsel that any of these provisions of the constitution or statutes, in words or even in legal effect, comprehend this case, but that, taken collectively, they manifest an intention on the part of the legislature to disregard or do away with the common-law rule that regarded husband and wife, for this and other purposes, as one person in law, and therefore the court ought to treat it as superseded or abolished. But in this matter the province of the court is to await the action of the legislature, and not to anticipate or endeavor to outstrip it, in the pursuit of a new notion. See *Stubblefield* v. *Menzies*, 8 Sawy. 41; [S. C. 11 FED. REP. 268.]

Counsel for the plaintiffs also cites cases from five states of the Union (*Hoffman* v. *Stigers*, 28 Iowa, 302; *Meeker* v. *Wright*, 76 N. Y. 262; *Cooper* v. *Cooper*, 76 Ill. 57; *Clark* v. *Clark*, 56 N. H. 105; *Walthall* v. *Goree*, 36 Ala. 728,) in which it is held that this common-law rule is no longer in force there, because inconsistent with statutes providing, in effect, that the property which comes to a married woman shall, notwithstanding the marriage, be her separate property,

and not subject to the control or interference of her husband, or liable for his debts.

But whatever may be claimed for the acts of October 21, 1878, (S. L. 94,) and October 21, 1880, (S. L. 6,) concerning the *status* and rights of married women, certainly there was no such statute as these in force in Oregon up to the death of Tobias Myers, when at least Mrs. Myers' right to the whole of this two-thirds interest in this property became vested beyond legislative control.

It also appears that in the case of *Noblett* v. *Beebe* the supreme court of this state, at the October term, 1882, held that, under a conveyance in fee to husband and wife in 1866, they took as tenants by entirety, and not in common, and that upon the death of one of them the whole estate continued in the survivor. The manuscript opinion that has been furnished me merely states the conclusion of the court, with the authorities relied on. But it is an authoritative declaration of the law of this state concerning the effect of a conveyance to husband and wife of real property, and, as such, is binding upon this court. Nor can it be presumed, as suggested by counsel, to have been made without reference to the provisions of the constitution and statutes of the state which might affect the question.

In *McGoon* v. *Scales*, 9 Wall. 27, Mr. Justice MILLER, in delivering the opinion of the court, says: "It is a principle too firmly established to admit of dispute at this day, that to the law of the state where land is situated must we look for the rules which govern its descent, alienation, and transfer, and for *the effect and construction of conveyances.*" See, also, *Brine* v. *Ins. Co.* 96 U. S. 635.

And the settled decisions of the highest court of the state, as to the law of real property therein, whether grounded upon the construction of a statute or the unwritten law, are also followed by the national courts as the law of the state. *Jackson* v. *Chew*, 12 Wheat. 162; *Williamson* v. *Suydam*, 6 Wall. 738; *Canal Co.* v. *Clark*, 13 Wall. 311.

The case of the *Town of Venice* v. *Murdock*, 92 U. S. 494, cited by counsel for the plaintiff to the contrary of this proposition, is not in point. The case turned upon the validity of certain bonds issued by the town in aid of a railway, and in no way involved an inquiry into the local law of real property, nor, in the opinion of a majority of the court, even into the construction of the statute under which the bonds issued, but rather the application of general principles to the rights of a *bona fide* holder of the same.

This conclusion disposes of the plaintiffs' claim to two-ninths of the property. Their right to the other two-ninths turns upon the effect to be given to the deed from Couch to Flanders, under which Tobias Myers claimed one-third of the premises prior to and independent of the conveyances to him and his wife by Baker and Pittock of the other two-thirds, in conjunction with the subsequent conveyance of the whole premises by Mrs. Couch to Reed.

For the defendants it is contended that this first conveyance, as

against the deed from Mrs. Couch to Reed, is without effect, because at the date of his conveyance he had no interest in the premises, and never afterwards acquired any; that block 10 is a part of Mrs. Couch's half of the Couch donation; and that her deed to Reed gave him the legal title to the whole of the premises in question. Substantially, this proposition is admitted by counsel for plaintiff; but he contends, further, that Reed being a co-tenant with the plaintiffs at the time he took the conveyance from Mrs. Couch, he will be held in equity to have acquired their devisor's third in trust for them. From the uncertainty of the allegations in the bill concerning the nature and date of this conveyance by Couch to Flanders, it is not readily seen what is admitted in this respect by the demurrer.

The bill alleges that a tract of the public land, including block 10, was laid off in blocks and lots by Couch and wife prior to 1850, and by them conveyed to Flanders on the ———— day of ————, 185-. Now, if this means anything as to time, it means that the conveyance was made some time in the "fifties,"—between 1850 and 1860,—and, under the well-known rule that an uncertain or ambiguous allegation must be construed against the pleader, it must be taken to mean 1850. And as it does not appear whether it was before or after September 27, 1850,—the date of the donation act,—it must for the same reason be taken to signify that the conveyance was made in the year 1850, but prior to September 27th. Besides, as it is not alleged that there were any covenants in the conveyance, it must be taken for granted that it was a mere deed of quitclaim, or bargain and sale, the only effect of which was to pass to the grantee therein the right of possession,—the only right which the grantors then had any claim to. *Lownsdale* v. *Portland*, 1 Deady, 7, 10, 43; *Chapman* v. *School-dist.* Id. 149; *Fields* v. *Squires*, Id. 379. Afterwards, it appears that Couch became a settler under the donation act on 640 acres of the public land, including the tract quitclaimed to Flanders, in pursuance of which Mrs. Couch, as his wife, received from the United States a grant of one-half thereof, including the premises in controversy, which she afterwards conveyed to Reed. No one else ever appears to have had any legal or equitable interest in the premises—the Myers having nothing but the bare possession under conveyances from persons who had no title or right to the land.

Furthermore, it is a fact so well known in the history of Portland that I am inclined to think the court may take judicial notice of it, particularly as it is not disputed by counsel that Capt. Couch's family did not remove from the east to Portland until 1852, and therefore it is not a fact that she was a party to the conveyance to Flanders. But be this as it may, her quitclaim deed, made prior to the passage of the donation act, does not affect the subsequent grant of the same premises to her by the United States. *Lownsdale* v. *Portland*, 1 Deady, 15, 47; *Chapman* v. *School-dist.* Id. 149; *McCroekin*

v. *Wright,* 14 Johns. 193; *Harden* v. *Cullins,* 8 Nev. 51; *Gee* v. *Moore,* 14 Cal. 472; *Quivey* v. *Baker,* 37 Cal. 470. And, if she afterwards chose for any reason, as out of any regard for her husband's conveyance of 1850, to convey the property to Reed, the plaintiffs had no right to complain of her action. She was under no legal obligation to convey it to either of them, and might have disposed of it to a third person.

But is Reed, under the circumstances, under any obligation to the plaintiffs to convey them the two-ninths interest which they claimed under this conveyance from Couch? The rule is admitted that if a co-tenant, and particularly a joint tenant, by descent, devise, or the same conveyance, purchase a title adverse or paramount to the one under which such tenant holds or claims, it will inure to the benefit of his co-tenants according to their respective interests in the common property. *Van Horne* v. *Fonda,* 5 Johns. Ch. 407; *Rothwell* v. *Dewees,* 2 Black, 617; *Wright* v. *Sperry,* 21 Wis. 341; *Frentz* v. *Klotsch,* 28 Wis. 317; Freem. Co-tenancy, § 154; *Flag* v. *Mann,* 2 Sumn. 520. But the application of this rule to mere tenants in common is not general, and depends on the circumstances of the case. Their only unity is possession, and the relation between them is necessarily less intimate than that of joint tenants. Their interests, though held under the same ultimate title, may accrue at different times by different means and from different persons. Under such circumstances, either of the tenants, provided he does not take advantage of his cotenants, and particularly if they are not in possession, may acquire for himself an outstanding or paramount title to the premises.

But it is said (Freem. Co-tenancy, § 155) that when a tenant in common makes use of the co-tenancy, or title, right, or claim under which it exists or is claimed to exist, to acquire such outstanding title, that upon this ground alone he will be held to have acquired it in trust for his co-tenants; and this proposition appears to me both reasonable and just. Now, according to the allegations of the bill, this is what occurred in this case. Reed obtained the legal title from Mrs. Couch, and she conveyed it to him, not for a valuable consideration, but in consideration of the prior deed of her husband, under which he and the plaintiffs then claimed the premises. And upon this ground the plaintiffs insist that Reed acquired two-ninths of the estate of Mrs. Couch in trust for them. But upon reflection it does not appear that the parties were tenants in common when Reed obtained the conveyance from Mrs. Couch. Under the deed from Couch, and as between themselves, Reed was tenant in fee of an undivided seven-ninths of the property, and tenant, for the life of Mrs. Myers, of the other two-ninths of the same, while the plaintiffs were the tenants in remainder of said two-ninths. They were not in possession or entitled to be during the continuance of such life estate. Upon this view of the case, this was not a purchase of an adverse title by one of several tenants in common. And still, under the circum-

stances, it may be that upon the death of Mrs. Myers, and as soon as the parties became tenants in common, that the plaintiffs were entitled to claim the benefit of this purchase from Mrs. Couch. The trust would arise and might be enforced as soon as the relation of cotenant was established by the termination of the estate for the life of Mrs. Myers. But, be this as it may, I find that the law regards the purchase of an incumbrance or outstanding title by the tenant for life as being made for the joint benefit of himself and the remainderman or reversioner, and that he *cannot* acquire it for his exclusive benefit. *Daviess* v. *Myers,* 13 B. Mon. 513; *Varney* v. *Stevens,* 22 Me. 333; Perry, Trusts, §§ 116, 540. And in Co. Lit. §§ 453–267*b,* it is laid down that "a release of a right made to a particular tenant for life, or in tail, shall aid or benefit him or them in the remainder."

My conclusion upon the whole case is that Reed obtained the conveyance from Mrs. Couch for the benefit of himself and the plaintiffs, according to their respective interests in the premises under the deed from John H. Couch, and that, therefore, he took two-ninths of the estate derived from Mrs. Couch in trust for the plaintiffs, and should convey it to them.

The demurrer is overruled.