(No. 23694.—

WILLIAM HARTWICK *et al. vs.* BELLE HEBERLING *et al.* Appellees.—(CRANDALL GRIMES *et al.* Appellants.)

*Opinion filed October 27, 1936—Rehearing denied Dec. 4, 1936.*

524

DRYER, BROWN & POOS, and WALTER J. CHAPMAN, for appellant Crandall Grimes; CHAPMAN & MOTZ, (W. J. CHAPMAN, and I. W. GIBERSON, of counsel,) for appellant Gertrude Cowan.

GEORGE E. DRACH, for appellee The Prudential Insurance Company of America; HUGH W. CROSS, and F. A. DuHADWAY, (MERRILL I. SCHNEBLY, of counsel,) for other appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Jarrett T. Grimes, a widower, died testate on July 11, 1915. After providing for payment of debts and funeral expenses his will reads as follows:

"*Second*—I give and devise to my son, James K. P. Grimes, and to the heirs of his body begotten, my homestead farm, upon which I now reside. [Then follows the description of approximately 240 acres of land in Jersey county.] And in case my said son James K. P. Grimes shall die leaving no heirs of his body begotten, then all of the lands herein described, as above set forth, shall vest in my daughters, Isabella Grimes, and Florence Grimes, and the survivor of them, in case either of them be dead at the time of the decease of my said son.

"*Third*—I give and devise to my daughter, Florence Grimes, [describing approximately 280 acres of land in Jersey county,] to have and to hold to her and the heirs of her body begotten; and in case my said daughter Florence, shall die leaving no heirs of her body begotten, then all of the lands in this section devised to her, shall vest in my said son James K. P. Grimes, and my said daughter,

Isabella Grimes, and the survivor of them, in case either of them be dead at the time of the decease of my said daughter, Florence Grimes.

"*Fourth*—I give and devise to my daughter, Isabella Grimes, [describing approximately 160 acres of land in Jersey county,] to have and to hold to her and to the heirs of her body begotten; and in case my said daughter, Isabella, shall die leaving no heirs of her body begotten, then all of the lands in this section devised to her, shall vest in my said son, James K. P. Grimes, and my said daughter, Florence Grimes, and the survivor of them, in case either of them be dead at the time of the decease of my said daughter, Isabella Grimes.

"*Fifth*—I give and bequeath to my son Edward Grimes the sum of one thousand dollars ($1000.00).

"*Sixth*—I give and bequeath to my daughter, Mary E. Hartwick, the sum of one thousand dollars ($1000.00).

"*Seventh*—I give and bequeath to my grand-daughter, Gertrude Grimes, the sum of one thousand five hundred ($1500.00) dollars.

"*Eighth*—I give, devise and bequeath, all of the rest, residue and remainder of my property, of whatsoever kind and description, real, personal and mixed, and wheresoever situated, to my said children, James K. P. Grimes, Florence Grimes, and Isabella Grimes and to the heirs of their bodies begotten, and in case of the death of either of them, leaving no heirs of their bodies begotten, then to the survivor or survivors of them.

"*Ninth*—I nominate and appoint my said son, James K. P. Grimes to be the executor of this my last will and testament, without bond or security."

The will was dated January 30, 1911. By a codicil dated April 12, 1911, the testator devised to his daughter Isabella an additional forty acres out of the lands devised by the third clause of his will. The terms of this devise in the codicil are the same as those in the fourth clause of

the will, and for that reason wherever the fourth clause of the will is mentioned hereafter it will be understood to include this codicil.

When the will and codicil were executed, Jarrett T. Grimes and his three children, Florence, Isabella and James K. P. Grimes, were living together on the homestead farm. Phillip Grimes, a married son, had died in 1900 leaving appellant Gertrude Cowan and four other children as his heirs. Gertrude Cowan was given a legacy of $1500 by the seventh clause of the will. Edward Grimes, another son of the testator, died intestate in 1921, and at the time of this suit appellant Crandall Grimes, a grandson, was his only heir. Edward received $1000 by the fifth clause of the will. Mary Hartwick, a daughter of Jarrett T. Grimes, died intestate on November 12, 1926, leaving five children as her only heirs. She received a legacy of $1000 by the sixth clause of the will. James K. P. Grimes, a bachelor, died intestate on November 6, 1914, during the testator's lifetime. He is the son mentioned in the second, third, fourth and eighth clauses of the will. Florence and Isabella were never married. They survived the testator and both died testate, the former January 23, 1932, and the latter in 1933. None of the last three children had descendants.

William Hartwick, since deceased, and Gertrude Cowan, filed the original bill for partition in the circuit court of Jersey county. They made the heirs-at-law of Jarrett T. Grimes, the heirs, legatees and devisees of Isabella Grimes and the executrix of her will, parties defendant. The bill sought partition of the 200 acres of land devised to Isabella Grimes by the fourth clause of her father's will. They alleged that this land was devised to Isabella for and during her natural life but that no disposition of the remainder was made; that since she died without leaving heirs of her body surviving her, this land passed as intestate property

to the heirs of Jarrett T. Grimes, and that the attempted devise of this land by Isabella Grimes was void.

Crandall Grimes answered the original bill and filed a cross-bill. In addition to the other parties to the original suit he made defendants to the cross-bill the executors, trustees, legatees and devisees named in the will of Florence Grimes, and certain other persons who had acquired interests by deed or mortgage in the lands devised to Florence and Isabella Grimes by the will of their father. The cross-bill alleges that only life estates were created by a deed made in 1874 by Jarrett T. Grimes and wife to Isabella Grimes and by the will and codicil of Jarrett T. Grimes, and that the eighth clause of his will did not devise the reversionary interest in any of his property but that all his property passed to his heirs as intestate property.

The circuit court sustained general and special demurrers to the amended bill for partition and the amended cross-bill as amended. Cross-complainant Crandall Grimes, and Gertrude Cowan, one of the complainants, stood by their pleadings and the bill and cross-bill were dismissed. They have appealed to this court, since freeholds are involved.

A determination of the issues requires a construction of the Jarrett T. Grimes will. The purpose of construing a will is to ascertain the intention of the testator and to give effect to that intention. (*Liesman* v. *Liesman,* 331 Ill. 287; *Fairview Lodge* v. *Gaddis,* 296 id. 570.) In interpreting a particular provision of a will the law authorizes and requires a consideration of the whole will, and the testator's intention will be arrived at from a consideration of all the language he has used, in whatever portion of the will that language may be found. (*Johnson* v. *Boland,* 343 Ill. 552, 555; *Drager* v. *McIntosh,* 316 id. 460.) All rules of construction of wills yield to the intention of the testator clearly expressed. Technical rules will not be permitted to defeat such intention when it is not in violation of a rule of law or public policy. (*Walker* v. *Walker,*

283 Ill. 11; *Lawson* v. *Merchants Trust Co.* 337 id. 49.) While decisions involving wills may serve to guide this court with respect to general rules as to the construction to be placed upon the will under consideration, yet unless the case be in every respect directly in point the decision will not control but at most will only be persuasive. (*Smith* v. *Garber*, 286 Ill. 67, 74; *Ward* v. *Caverly*, 276 id. 416; *O'Hare* v. *Johnston*, 273 id. 458.) There is also a presumption against intestacy which arises from the making of a will, and any reasonable construction which avoids a partial intestacy will be adopted. (*Halderman* v. *Halderman*, 342 Ill. 550, 556, and cases there cited.) The law favors the vesting of estates at the earliest possible time, and the rule is established by many authorities that estates devised will vest at the death of the testator unless a later time for their vesting is clearly determined by the express words of the will or is necessarily implied therefrom. *Northern Trust Co.* v. *Wheaton*, 249 Ill. 606, 612; *Carter* v. *Carter*, 234 id. 507; *Knight* v. *Pottgieser*, 176 id. 368.

This case involves a construction of the second, third, fourth and eighth clauses of the will, its codicil, and the deed made in 1874 by Jarrett T. Grimes and wife to Isabella Grimes.

With reference to the second clause of the will, it is contended that the death of James K. P. Grimes during the testator's lifetime lapsed the devise to James for life; that the alternative gifts over after this life estate were contingent remainders with a double aspect; that since this life estate never vested, the gift in remainder to the heirs of the body of James begotten, and the gift to his sisters Florence and Isabella, "and the survivor of them," in the event of his death leaving no bodily heirs, both failed. It is also contended that contingent remainders must be supported by an estate of freehold; that the gift to the sisters could not be accelerated, and that the eighth or residuary clause of the will did not catch up the lands attempted to

be devised by clause 2, and that therefore these lands descended as intestate property to the heirs of Jarrett T. Grimes.

Appellants claim that the substitutionary gift to Florence and Isabella is not effective because the testator did not mean it to become operative unless James survived him. Where a testator makes a devise *simpliciter* to one devisee and in case of his death to another, he will be presumed to have intended the death of the first devisee during the testator's lifetime, but if the gift over is to take effect in the event the first devisee dies under circumstances which may or may not take place, such as death without issue, unless the language is controlled by other provisions of the will, such a devise will take effect upon the death of the first devisee under the circumstances specified, whether he dies before or after the testator. *Baird* v. *Garman,* 349 Ill. 597; *Johnson* v. *Boland,* 343 id. 552; *Millikin Nat. Bank* v. *Wilson,* 343 id. 55; *Clark* v. *Leavitt,* 330 id. 350; *Risser* v. *Ayers,* 306 id. 293.

A reading of the whole will in the light of the circumstances surrounding the testator when he made the will, in connection with the language of the second clause, shows that the testator meant the death of James either before or after the testator's death, and that his intention was that if James should die at any time and leave no heirs of his body surviving him, the substitutionary gift to his daughters Florence and Isabella should take effect at once. The intention to give the bulk of the testator's estate to James, Florence and Isabella is further indicated by the fact that the testator left substantial legacies to his other two children who were living when he made his will, and to one grandchild, the daughter of his deceased son, Phillip. By other clauses of his will he disposed of his remaining estate to the three children who were unmarried and living with him on the homestead farm, namely, James, Florence and Isabella.

In the second clause of the will the gift was to James for life with remainder to the heirs of his body begotten. If James should die at any time and no heirs of his body begotten survived him, there was a substitutionary gift of the lands in this clause to Florence and Isabella "and the survivor of them." Similar provisions are contained in the third, fourth and eighth clauses of the will. The fact that James K. P. Grimes was named as executor in the will is pointed to as an indication that the testator meant death of James only after the testator's death. The decision in *Ahlfield* v. *Curtis,* 229 Ill. 139, is cited in support of this. In that case the devisee named as executor was also given certain active duties to perform, including the furnishing of a home to the mother of the testatrix. A reading of the whole will in the *Ahlfield case* discloses that it was the testatrix's intention that the devisee should outlive her, and the fact that the devisee was named as executrix was only one of the circumstances considered. The intention shown by the will before us was, that if James died at any time without heirs of his body surviving him, his sisters Florence and Isabella were to take the lands described in the second clause of the will. The fact that James was named as executor cannot defeat the clear intention of the testator.

Our decisions in *Schneller* v. *Schneller,* 356 Ill. 89, *Burlet* v. *Burlet,* 246 id. 563, *Frail* v. *Carstairs,* 187 id. 310, and *Pirrung* v. *Pirrung,* 228 id. 441, are cited to support the contention that the testator meant the death of James after the death of the father. In all those decisions section 11 of the Descent act (39 S. H. A. 11; State Bar Stat. 1935, chap. 39, par. 11;) was involved, and in all but one of them there were children or grandchildren who would be disinherited, but for the operation of that section, if the death had been interpreted as death at any time. It is admitted that section 11 of the Descent act has no application to the case before us. Those decisions must be con-

sidered only in the light of their facts. They cannot be permitted to control the decision here, where the facts are entirely different and the testator's language clearly expresses a contrary intention.

Counsel contend that the devises in the second clause of the will constitute contingent remainders with a double aspect. We are not concerned with what estates would have been created by this clause in the lands there described if James had outlived his father. Alternate remainders, or contingent remainders with a double aspect as they are also called, must be dependent upon one single, contingent event. (*Farmer* v. *Reed,* 335 Ill. 156, 161.) Here the gift to James for life was followed by a gift in remainder to the heirs of his body begotten. The contingent event in this gift of a remainder in fee, under our statute, was the birth of issue to James. The gift in this clause to Florence and Isabella, "and the survivor of them," was upon the contingency that James died without heirs of his body surviving him. We have already held that the death of James meant death either before or after that of Jarrett T. Grimes, the testator, and this gift to Florence and Isabella was intended to be, and was, a devise, under the facts of this case, of a present estate, and it vested in them at the death of the testator, as he intended it to do.

*Schaffenacker* v. *Beil,* 320 Ill. 31, *Drager* v. *McIntosh,* 316 id. 460, and *Bond* v. *Moore,* 236 id. 576, cited by appellants, do not support their contention that the death of James K. P. Grimes lapsed the life estate devised to him by this clause of the will, and that this prevented the substitutionary gift to his sisters Florence and Isabella from taking immediate effect upon the death of the testator.

Having determined that the testator meant death of his son James either before or after his own demise, the construction of the third clause of the will should be that by it Florence Grimes took a life estate in the lands there de-

scribed and that upon her death leaving no issue surviving, Isabella took title in fee simple.

The contention of appellant Crandall Grimes that all that could possibly pass by the substitutionary gift to Isabella in clause 3 of the will would be a half interest in the terminated life estate of Florence need not be considered.

As to the fourth clause of the will, the fact was that the life tenant Isabella Grimes survived the testator, her sister Florence and her brother James. She died testate without ever having had issue. The sole question presented is as to the disposition of the reversion in the lands described in this clause of the will—that is, whether the reversion passed by the laws of descent to the heirs of the testator or was devised by the eighth or residuary clause of the will.

It is contended that the residuary clause is not broad enough to dispose of the reversionary interest in the lands described in the fourth clause of the will and in the codicil; that the testator had attempted to make disposition of all his interest in the lands described in the second, third and fourth clauses of his will, and that by the eighth clause he intended to dispose of the town property alone. It is also claimed that in any event the only interests devised by the eighth clause were life estates and contingent remainders to the heirs of the bodies of James, Florence and Isabella, which remainders failed for want of issue. It is also contended that since Isabella was a specific devisee, the lands devised to her by the fourth clause and the codicil could not augment the residuum for the reason that she was also a residuary devisee, and similarly that the interest of James lapsed at his death, and whatever was devised to him by the eighth clause passed to the heirs of the testator as intestate property.

We have already held that the lands described in the second clause of the will passed immediately in possession and in fee on the death of the testator to Florence and Isa-

bella; that the lands described in the third clause passed in fee, on the death of Florence without heirs of her body surviving, to her sister Isabella, and that Isabella took only a life estate in the lands described in the fourth clause of the will and the codicil. No authorities are furnished us in support of the contention that the eighth or residuary clause is not broad enough to include the reversionary interest which remained in the testator in the lands described in the fourth clause of his will and in the codicil. The words, "all of the rest, residue and remainder of my property, of whatsoever kind and description, real, personal and mixed, and wheresoever situated," included all the real estate the testator owned and every interest therein that he had not disposed of. The testator may have thought that he had made a complete disposition of the property described in the fourth clause of his will and in the codicil, but, in fact, he had not, and by the eighth clause the title to these lands passed, and the intention so expressed must be given effect. In *Hollenbeck* v. *Smith,* 231 Ill. 484, 489, we held that even where a testator did not know he owned the real estate, a general residuary clause such as the one before us would pass a homestead interest in lands the testator thought he had already conveyed away.

The fact that Isabella Grimes took only a life estate in the lands devised by the fourth clause of the will and by the codicil answers the contention that she could not take as residuary devisee the lands devised to her specifically. It is neither inconsistent nor absurd for a testator to give to a life tenant an interest in fee in the remainder. (*Lynn* v. *Worthington,* 266 Ill. 414; *Downing* v. *Grigsby,* 251 id. 568.) If a specific devise includes only a partial or a contingent interest, or if an estate in fee is devised specifically but is to take effect only on the happening of some contingent event, the reversion will pass by a residuary clause in the same will although the devisee of the partial or contingent interest is also the residuary devisee. *Ryan* v. *Beshk,*

339 Ill. 45; *Fisher* v. *Easton,* 299 id. 293; *Friedman* v. *Friedman,* 283 id. 383; 1 Jarman on Wills, (5th ed.) 650.

Appellants contend that the eighth clause of this will created only a tenancy in common for the lives of James, Florence and Isabella; that at their respective deaths the title in an undivided one-third in fee descended as intestate real estate to the heirs of the testator, and that, in any event, the death of James before his father died lapsed the gift to him, and the undivided one-third interest his heirs of the body would have received passed as intestate real estate.

The first devise in the eighth clause of this will would have created a tenancy in common in fee tail, which by section 6 of the Conveyance act became an estate in common for the lives of James, Florence and Isabella, with a remainder in fee simple in the heirs of their bodies. (*Lewin* v. *Bell,* 285 Ill. 227; *Peterson* v. *Jackson,* 196 id. 40.) However, the second devise in the clause was the one which became operative, since James died and left no heirs of his body surviving. This part of the clause reads as follows: "and in case of the death of either of them, leaving no heirs of their bodies begotten, then to the survivor or survivors of them."

Section 13 of our Conveyance act provides that every estate in lands which shall be granted, conveyed or devised shall be deemed a fee simple estate of inheritance if a less estate be not limited by express words or does not appear to have been granted, conveyed or devised by construction or operation of law. The ordinary meaning of the language used in this gift, "to the survivor or survivors of them," is of a gift in fee. The plain meaning of the clause is, that if any of the three children named should die without leaving issue them surviving, the other one or two who survived should take, not the interest of the one who died, but the entire estate in the lands and whatever passed by this residuary clause. The death mentioned in this clause

meant death either before or after that of the testator, just as it did in the second clause of his will, and for the same reasons. Florence and Isabella Grimes survived James, their brother, and survived the testator. They took as residuary devisees all of the lands and property of every kind that the testator had not otherwise disposed of in the earlier clauses of his will and the codicil, and the title to the land finally vested, by the right of survivorship, in Isabella.

The last question in this case requires a construction of the deed of November 10, 1874, from Jarrett T. Grimes and wife to Isabella Grimes, covering 160 acres of land in Montgomery county. The printed form used was that called a "bargain-and-sale" deed. Wherever the words "and assigns" appeared in the printed form they were stricken out. In the premises of the deed the party of the second part was given as "Isabella Grimes, her children and lawful heirs." The grant was to "the said party of the second part and to her heirs." Another clause was inserted after the description of the property and immediately preceding the *habendum,* which reads as follows: "The intention of this deed being to convey to said Isabella Grimes the above described real estate for and during her natural life, and at her decease the title to the same to descend to her children and lawful heirs." The *habendum* was "to the said party of the second part, and her heirs." It is contended that under this deed Isabella took only a life estate; that the remainder did not pass by the deed and did not pass by the eighth or residuary clause of Jarrett T. Grimes' will, and it is contended by appellant Crandall Grimes that the reversionary interest was undisposed of and was a possibility of reverter until the death of Isabella, and then became a reversionary interest in the heirs generally of the grantor, Jarrett T. Grimes. The appellees contend that the deed vested the fee simple title to the 160 acres of land in Isabella, but that if this were not the effect of the deed, the reversionary interest in fee passed by the residuary

clause of the will of Jarrett T. Grimes. The rule is, that where there are two repugnant clauses in a deed the first of the two clauses will control. (*Cooper* v. *Cooper,* 76 Ill. 57; *Nave* v. *Bailey,* 329 id. 235.) If we disregard for the moment the so-called intention-clause in the deed, this instrument would grant a fee simple to Isabella Grimes in the lands described, regardless of the fact that the premises of the deed named "Isabella Grimes, her children and lawful heirs," as the party of the second part. The reason of this, from such cases as *Cooper* v. *Cooper, supra, Baulos* v. *Ash,* 19 Ill. 187, and *Duffield* v. *Duffield,* 268 id. 29, is, that Isabella had no children when this deed was made and no heirs, so that she was the only party named who could take as a grantee, and since there was no future estate attempted to be created as a gift over, the conveyance to Isabella, even without the words "and her heirs" or "her lawful heirs," was sufficient to pass a fee.

We held in *Strawbridge* v. *Strawbridge,* 220 Ill. 61, and *Leiter* v. *Sheppard,* 85 id. 242, that the reference to the children of the grantee could not have the effect of cutting down the estate in fee simple to the first taker—here "the party of the second part and her heirs"—who had already been granted the land by the granting clause of this deed. But if we were to disregard the fact that the two clauses in this deed are repugnant and confine our consideration to the intention-clause, we find that it is ambiguous, in that it says Isabella Grimes was intended to receive a life estate and at her death the title was to descend to her children and lawful heirs. Unless she took the title to more than a life estate nothing could descend from her to her children. We have pointed out that she never had any children. The same clause of this deed that says she should have a life estate in the lands says that her "lawful heirs" were to inherit, and since heirs or lawful heirs include children, and there is nothing in the deed except the word "children" to indicate a particular class of heirs, and this particular class

of heirs was never existent and is a smaller class than heirs generally, and the word "heirs" generally is found elsewhere in the deed, both in the grant and *habendum*, the words "her lawful heirs" must be given their technical and usual meaning. There is always a strong presumption that the word "heirs" shall receive its technical meaning. (*Carpenter* v. *Hubbard*, 263 Ill. 571.) The result would be, taking into consideration this clause alone, that the deed would constitute a grant of a life estate to Isabella Grimes with a remainder to "her lawful heirs," which would include any children that might be born after the deed was made who might be living at her death, but who would not take as grantees for the reason that they were not in being when the grant was made and who therefore could not take as purchasers, since no words to create a future estate were used. In such a case the life estate and remainder merge in the grantee, and he takes a fee simple title to the lands conveyed. No particular words need be employed to create the situation, and all that is required is for the deed to show that the grantee is the source or terminus from which the indefinite succession of heirs is to flow. (Fearne on Remainders, (4th Am. ed.) pp. 187, 188; *People* v. *Emery*, 314 Ill. 220, 224.) The facts make the case one to which the rule in *Shelley's case* is applicable, and Isabella Grimes was vested with the title in fee if the intention-clause were considered as the controlling and granting clause of the deed.

The case of *Haughn* v. *Haughn*, 296 Ill. 305, is cited by the appellant Gertrude Cowan, but in that case there was a gift over to the children and heirs of Marion Haughn and Emily Read not found in the deed before us. In *Harder* v. *Matthews*, 309 Ill. 548, it was expressly held that a similar gift over controlled. In *Griswold* v. *Hicks*, 132 Ill. 493, a gift over was provided in default of children, and in *Woods* v. *Seymour*, 350 Ill. 494, the grant to a son was of a base or determinable fee. He also had a limited power of sale, and it was provided that if he died without children

him surviving the title should go over to others. These cases are not in point. If only a life estate had been created by the deed the residuary clause of the testator's will would have passed the reversion to the residuary devisees to the exclusion of appellants.

For the reasons stated the decree is affirmed.

*Decree affirmed.*